UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JASON ALTHEIDE,<br><br>   Plaintiff<br><br> v.<br><br>BRIAN SANDOVAL et al.,<br><br>   Defendants | Case No.  2:17-cv-02821-JCM-BNW<br><br>ORDER |

Presently before the court is plaintiff Jason Altheide's motion for summary judgment. (ECF No. 64).  Defendants James Dzurenda, Alexis Lozano, and Brian Williams responded, (ECF Nos. 68, 69), to which plaintiff replied, (ECF Nos. 71, 72, 74).

Also before this court is defendants' motion for summary judgment.  (ECF Nos. 78, 79). Plaintiff responded, (ECF No. 84), to which defendants replied, (ECF Nos. 87).

**I.**  **Background**

This matter arises from events during plaintiff's incarceration at High Desert State Prison ("HDSP").  (ECF Nos. 6, 12, 21).

While in prison, plaintiff acted violently towards people on several occasions.  (ECF No. 79).  Two disciplinary incidents—the "December incident" and "January incident"—are particularly relevant to this action:

On December 26, 2016, plaintiff assaulted his cellmate by striking and stomping on him. (*Id.*).  After correctional officers removed plaintiff from his cell, he remained combative and refused to comply with verbal commands.  (*Id.*).  Facing disciplinary charges for assault and battery, plaintiff attended a preliminary hearing on January 6, 2017, and a disciplinary hearing on January 24, 2017.  (*Id.*).  Plaintiff had last received a psychiatric review on December 19, 2016. (*Id.*).  At hearing, plaintiff presented evidence of mental health issues and claimed the incident was

due to a lack of medication. (*Id.*). Plaintiff was initially ordered to disciplinary segregation, but this was suspended due to his mental health status. (*Id.*). Plaintiff was placed in administrative segregation per AR 521.5.

On January 23, 2017, Altheide cursed at and attempted to kick a correctional officer. (*Id.*). For this, plaintiff was convicted of blocking/threatening staff. (*Id.*). Plaintiff received hearings for this incident on January 28 and February 23, 2017. (*Id.*). Plaintiff had received four mental health evaluations not long before this disciplinary hearing. (*Id.*). He was confined to disciplinary segregation, but this sanction was again suspended. (*Id.*). Plaintiff remained in administrative segregation, spending time there and in the behavioral modification unit. (*Id.*).

Per its administrative regulations ("AR"), the Nevada Department of Corrections ("NDOC") has several types of inmate segregation: relevant here are administrative segregation and disciplinary segregation. (*Id.*). These housing regulations are separate and distinct. (*Id.*). Indeed, the differences in privileges between the two units reflect this reality.

Administrative segregation is governed by AR 521. Administrative segregation is not a disciplinary tool. (*Id.*). Unless specifically ordered, inmates in administrative regulation receive the same clothing, food, and correspondence privileges as inmates in general population. (*Id.*). Inmates in administrative segregation undergo regular reviews to determine if continued placement is warranted. (*Id.*). Mental health staff also conduct periodic reviews of the segregated inmates. (*Id.*).

Disciplinary segregation is governed by AR 733. (*Id.*). Such segregation is a sanction for inmates. (*Id.*). Inmates in disciplinary segregation do not have the same privileges as inmates in administrative segregation or general population. (*Id.*).

Plaintiff initiated the instant action on November 6, 2017. (ECF No. 1). At this juncture, the operative complaint is the fourth amended complaint subject to this court's screening order. (ECF Nos. 12, 21, 26). Plaintiff's remaining claims are for 1) "disciplinary segregation due process"; 2) "administrative segregation due process"; and 3) "cruel and unusual punishment . . . against defendants Lazano, Dzurenda, and Williams." (ECF No. 21).

The parties now cross-move for summary judgment. (ECF Nos. 64, 78).

## II. Legal Standard

Summary judgment is proper when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and to avoid unnecessary trials on undisputed facts. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

When the moving party bears the burden of proof on a claim or defense, it must produce evidence "which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proof on a claim or defense, the moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of [proof] at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party satisfies its initial burden, the burden then shifts to the party opposing summary judgment to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a fact is "material" if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The opposing party does not have to conclusively establish an issue of material fact in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). But it must go beyond the pleadings and designate "specific facts" in the evidentiary record that show "there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. In other words, the opposing party must show that a judge or jury is required to resolve the parties' differing versions of the truth. *T.W. Elec. Serv.*, 809 F.2d at 630.

The court must view all facts and draw all inferences in the light most favorable to the

nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). The court's role is not to weigh the evidence but to determine whether a genuine dispute exists for trial. *Anderson*, 477 U.S. at 249.

**III.    Discussion**

This court finds that the uncontroverted evidence demonstrates that defendants would prevail on each of the remaining claims. (ECF Nos. 78, 79). This court examines each of plaintiff's claims in turn.

*A.  Plaintiff's Disciplinary Segregation Claim*

This court grants summary judgment for defendants on plaintiffs' first claim, because 1) the record shows that plaintiff received mental health evaluations before his disciplinary hearings and 2) plaintiff was not placed in disciplinary segregation. (*Id.*).

Due process for disciplinary hearings requires advance written notice of charges, written statement by the fact finder of the evidence relied upon, and a qualified right to call witnesses and present evidence. *Wolff v. McDonnell*, 418 U.S. 539, 563–69 (1974); *see also Machlan v. Neven*, No. 3:13-cv-00337-MMD, 2015 WL 1412748, at * 12 (D. Nev. Mar. 27, 2015) (*aff'd*, 656 F. App'x 365 (9th Cir. 2016)) ("[F]or the purposes of §1983, [prison officials] need only respect the directives of *Wolff*."). Here, plaintiff alleges that psychiatric evaluations are required as well.

However, the records are abundantly clear that plaintiff received several psychiatric reviews, prior to and around his disciplinary hearings. (ECF No. 79). For example, on December 15, 2016, intake staff conducted a mental health evaluation and rated him as a high mental health risk. (*Id.*). A January 19, 2017 entry also reflects this rating. (*Id.*). In a December 19, 2016, evaluation, plaintiff discussed his history of mental illness and on other occasions he discussed his medication. (*Id.*). In total, plaintiff had received at least six evaluations around the time of his two disciplinary hearings. (*Id.*).

Plaintiff responds that he did not receive a mental health evaluation prior to his disciplinary hearing regarding the December 25, 2016, incident, (ECF No. 84); however, the uncontroverted medical records and case notes reflect that evaluations occurred on December 16 and 19, 2016.

1  (ECF No. 79).  Plaintiff seems to then argue that he was entitled to an additional evaluation during
2  the week between the incident and his initial disciplinary hearing.  (ECF No. 84).  But plaintiff
3  offers no caselaw reflecting such a requirement, nor was such a claim allowed to proceed—
4  plaintiff pled that a "psychiatric evaluation was never done prior to hearing."  (ECF No. 12).  This
5  allegation is disproven by the record evidence that he received evaluations only weeks before each
6  of his hearings.  (ECF No. 79).

7         This court also finds that the evidence shows that plaintiff was not placed in disciplinary
8  segregation.  (ECF No. 79).  Instead, he was placed in administrative segregation and then a
9  behavioral modification unit—never disciplinary segregation.  Plaintiff was initially placed in
10 administrative segregation in December 2016, pursuant to AR 521, where he remained until June
11 2017, when he was transferred to a behavioral modification unit.  (*Id.*).  He returned to
12 administrative segregation in October 2017.  (*Id.*).  Simply put, the uncontroverted evidence shows
13 that plaintiff was never placed in disciplinary segregation as he alleges.

14        NDOC's administrative segregation and behavioral modification units are not forms of
15 discipline—they are instead intended to protect the inmate and other inmates.  (ECF Nos. 78, 79).
16 Administrative segregation inmates are provided the same correspondence privileges, contact
17 visits, outdoor exercise, and canteen availability as general population inmates.  (*Id.*).  Restrictions
18 on administrative segregation inmates are only imposed if the restriction is necessary to maintain
19 the safety or health of the inmate.  (*Id.*).  Similarly, the behavioral modification unit is not a
20 disciplinary segregation unit.  This unit is used to transition inmates back into general population.
21 (*Id.*).  These housing situations stand in contrast to disciplinary segregation which imposes limits
22 on inmates with the intent of punishment.  (*Id.*).

23        Plaintiff fails to raise a genuine dispute over his psychiatric evaluations or placement in
24 disciplinary segregation.  (ECF No. 84).  Indeed, his next claim challenges his treatment while in
25 administrative segregation.  (ECF No. 12).  Accordingly, this court grants defendants' request for
26 summary judgment on plaintiff's first claim.  (ECF No. 78).

27    B. *Plaintiff's Administrative Segregation Claim*

28        As to plaintiff's second claim, this court also grants summary judgment for defendants

1 because the record demonstrates that plaintiff received periodic reviews of his placement. (ECF
2 No. 78).

3 In administrative segregation, prisoners must receive regular reviews examining whether
4 segregation remains justified. (ECF No. 79); *see also Hewitt v. Helms*, 459 U.S. 460, 477 n. 9
5 (1983). Here, the uncontroverted evidence shows that Altheide received periodic reviews of his
6 segregation, and that during his five months in administrative segregation, he received five
7 classification reviews. (ECF No. 79). Plaintiff offers no substantive response to defendants'
8 position. (ECF No. 84). Instead, he argues that he should have been placed in a single bed cell in
9 a mental health unit. (*Id.*). However, again, this claim is not before this court per the operative
10 complaint—plaintiff claimed only that he did not receive the requisite reviews while in
11 administrative segregation. (ECF No. 21).

12 Thus, this court grants summary judgment for defendants on this claim. (ECF No. 78).
13 Defendants' uncontroverted evidence demonstrates that plaintiff received regular reviews while
14 housed in administrative segregation. (ECF No. 79).

15 *C. Plaintiff's Cruel and Unusual Punishment Claim*

16 Finally, this court grants summary judgment for defendants on plaintiffs' remaining claim
17 because the record demonstrates that plaintiff was never placed in solitary confinement or
18 prolonged isolation. (ECF No. 79). As already discussed, the evidence reflects that he was placed
19 only in administrative segregation and then a behavioral modification unit. (*Id.*).

20 Defendants argue that administrative segregation does not result in solitary confinement or
21 prolonged isolation. (ECF No. 78). Indeed, AR 521—which governs administrative
22 segregation—notes that inmates may receive physical visits, can have cellmates, and have the
23 opportunity for group activities. (ECF No. 79). The record reflects that the administrative
24 regulations appropriately governed plaintiff's confinement. Although plaintiff did not have a
25 cellmate, he was eventually encouraged to find an inmate and informed that the classification
26 committee would consider assigning him one. (*Id.*). Plaintiff declined and reacted violently. (*Id.*).
27 The record also shows that plaintiff met routinely with healthcare providers, his caseworker, and
28 the classification committee. (*Id.*). Furthermore, on August 16, 2017, an entry reflects how

plaintiff was allowed into an open area to congregate with other inmates. (*Id.*). At this juncture, plaintiff offers no evidence that rebuts the defendants' position.

This court again finds that the records conflict with plaintiffs' pleadings and contain uncontroverted evidence that defendants would succeed on these claims. Plaintiff was not placed in solitary confinement during his time in administrative segregation. (ECF Nos. 78, 79).

Thus, this court concludes that no genuine issues of material fact exist as to plaintiff's three claims. (ECF No. 78). Defendants' motion for summary judgment is granted and plaintiff's motion is denied. Furthermore, this court dismisses the remaining Doe defendants, because plaintiff has failed to conduct discovery or produce evidence to identify these parties. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants James Dzurenda, Alexis Lozano, and Brian Williams's motion for summary judgment, (ECF No. 78), be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff Jason Altheide's motion for summary judgment, (ECF No. 64), be, and the same hereby is, DENIED.

The clerk is ordered to enter judgment and close the case accordingly.

DATED March 22, 2021.

_____
UNITED STATES DISTRICT JUDGE